"On 30 May, 1825, a single bill, executed by Tunstall and the plaintiff Dawson, under their hands and seals, was made in order to be discounted at the State Bank, for the use of Tunstall, for the sum of $4,500, payable in eighty-eight days after date, negotiable at the State Bank and payable to the defendant Pettway, and by him endorsed in blank. On the 7th of June the said bill or note was discounted at the bank, for the accommodation of Tunstall, and the proceeds passed to his credit. After the note fell due it was renewed in full by paying the accrued interest and giving a note in the following words:
"August 30, 1825.
"$4,500. Eighty-eight days after the first day of September next, we promise to pay to Mark H. Pettway, or order, four thousand five (532) hundred dollars, for value received, negotiable and payable at the State Bank of North Carolina, at Raleigh.
 "PEY R. TUNSTALL. (Seal) "J. A. DAWSON. (Seal)
"For renewal."
This note was executed by said Tunstall and Dawson, under their hands and seals, and endorsed by said Pettway. The body of the note was written by Pettway, and the words added at the foot of the note "for renewal," in his hand-writing. This second note not being paid at maturity a suit was brought by the bank against all the parties, and a judgment recovered at Fall Term, 1826, of Wake Superior Court. An execution issued thereupon, returnable to the ensuing Spring Term of that court, on which the present plaintiff paid the sum of $4,864.92 1/2, being the full amount of the principal, interest, and costs due 2 March, 1827, for the one moiety of which, with interest, the present action is brought. At the bringing of this action, and for several years before, the said Tunstall was dead and insolvent.
Upon the foregoing statement, should the court be of opinion that in law the plaintiff is entitled to call on the defendant for contribution, the judgment to be entered for the plaintiff for the sum of $2,432.46 1/2, with interest from the said 2 March, 1827, in which event is to be set off and deducted therefrom the sum of $2,249.91, being the amount due this defendant, for principal, interest, and costs upon judgments obtained in Halifax County Court by the said Pettway against the said Dawson, an execution be granted for the residue. Should the court be of a contrary opinion, then judgment to be entered in this action for the defendant." Upon this case his Honor was of opinion for the plaintiff, and gave judgment accordingly, from which the defendant appealed. *Page 419 
It is a plain principle of equity that those who have (533) engaged in a common hazard should share in the loss consequent upon it, and on this principle is founded the obligation of contribution between co-sureties. The question in this case is whether, upon the facts agreed, the law infers that the plaintiff and defendant did take upon themselves a common risk. So far as the determination of this question depends upon the nature of the engagements made by the plaintiff and defendant with the creditor of Tunstall, the inquiry is free from difficulty. The plaintiff, by executing the bond as a co-obligor with Tunstall, bound himself absolutely for the payment of the debt; whereas, the defendant, by indorsing the bond, engaged to pay only upon the default of Tunstall and the plaintiff. While the plaintiff, therefore, became the surety of Tunstall, the defendant became the surety of Tunstall and the plaintiff. The form of the transaction with the creditor is, however, but prima facie evidence of the relation between the debtors, and does not conclusively establish the order of their liabilities as arranged among themselves; and it is insisted for the plaintiff that the fact that the plaintiff executed and the defendant indorsed the bond for the accommodation of Tunstall, and without benefit to either, makes Tunstall sole principal, both to plaintiff and defendant, and therefore constitutes them joint and equal sureties for him. To this argument we do not assent. The fact relied on certainly shows that, as between Tunstall and the plaintiff, the former was principal and the latter surety, and confirms what is to be inferred from the nature of the instrument that Tunstall was also a principal in relation to the defendant; but we cannot see how it establishes that Tunstall was not also a principal with respect to the defendant, as the instrument indicates. The fact is as consistent with the allegation of the defendant, that he was a supplemental surety in addition to the plaintiff, the primary surety, as with the allegation of the plaintiff that the defendant and himself were co-sureties, and therefore it in no way repels the inference to be drawn from the nature of their respective liabilities to the creditor. But the case of Daniel v.McRae, 2 Hawks, 590, has been pressed upon us as an authority establishing the position that where two persons, for the accommodation of a third, makes themselves responsible for his debt, the law, without regard to the nature of their engagements, pronounces them (534) to be joint sureties. We have before had occasion to declare our purpose to adhere to the adjudication in that case, Richardson v. Simms, 1 Dev. and Bat., 48), but, in our opinion, it is far from sanctioning the position for which it is cited. In Daniel v. McRae, it was decided that *Page 420 
where there are successive indorsers of an accommodation note, they are to be regarded, until the contrary is shown, as co-sureties for the maker, but it professes so to decide upon principles inapplicable to the case of the maker and indorser of such a note. In delivering his opinion inDaniel v. McRae, Judge Henderson, one of the Court that concurred in the decision, begins with laying down the doctrine that co-sureties are those who have assumed the same obligation and are equal in all their liabilities, while supplemental sureties are those who come in aid of the former, and then undertakes to show that the successive indorsers have assumed the same obligation, because the last indorsement "imposes no obligation on the holder to apply to the prior indorser, before he calls upon the subsequent indorser," while he distinguishes the obligations of a maker and an indorser, inasmuch as the holder "must make proof of his endeavors to procure payment from the maker, before he can resort to any indorser." In the subsequent case of Smith v. Smith, 1 Dev. Eq. Rep., 173, where the plaintiff's intestate had executed the note with the principal debtor for his accommodation, and the defendant had indorsed it at the request of the principal, and with a knowledge that it was to be discounted for his benefit, the same judge delivering the opinion of the whole court, recognizes it as the rule both of law and equity, "to regard the order of liability arising upon the face of the transaction as fixing prima facie the relations of principal and surety, and of co-sureties and supplemental surety"; and in noticing the argument that the circumstance of its being known to the indorser, that one of the joint makers was not a principal, but a surety only in the note, created an agreement of mutual liability between the indorser and such joint maker, "declares not only that such a doctrine had never been established, but that it would be to place a man in a grade and order of liability not in accordance with his act," and which could not be done without his (535) assent. In the case of Gomez v. Lazarus, 1 Dev. Eq. Rep., 205, we find a recognition sufficiently explicit of the same principles. Gomez had accepted and Clark had indorsed for the accommodation of Levy, a bill drawn by the latter. "There is no agreement," says JudgeHenderson, "made between Clark and Gomez to change the order of their liability appearing upon the face of the transaction. Upon it Gomez stands prior in obligation to Clark, for Clark's liability was to arise upon his default. Standing in this relation, Gomez cannot call on Clark to contribute as a co-surety." And finally, in the case of Hatcher v.McMorine, 3 Dev., 228, where the same learned judge professes his willingness to review the case of Daniel v. McRae, because the decision therein had not given general satisfaction, and was contradicted by an adjudication in the Supreme Court of the United States, he sets forth the extent of that decision, viz.: "that in bills or notes, for the *Page 421 
accommodation of the drawer or maker, prior and posterior indorsers stand in equal degree as co-sureties, without any express contract to that effect, if, at the time of their respective indorsements they knew that it was accommodation paper, for the benefit of the drawer or maker, and that nothing was paid for or upon the indorsement." The case of Daniel v. McRae
cannot, therefore be regarded as authority for the position here urged by the plaintiff, without a perversion of the declared meaning of those by whom it was decided. It lays down a rule from which, whether originally right or wrong, we cannot depart, without violence to the understanding and practice of the community, which have conformed to it — but it is a rule confined to prior and subsequent endorsers upon accommodation paper. It does not establish, nor was it intended nor has it been understood to establish, the like rule as between the maker and indorser — or the acceptor and indorser — or others liable in different characters, upon such paper. And to introduce it among these would be to violate principles, to produce confusion, and to contradict the general usages of the commercial world.
In this case the original bond on which the loan was obtained from the the bank, and the bond subsequently given in renewal, were both executed and endorsed in the same manner. Had it been otherwise, this circumstance, perhaps, might have been evidence to a jury, (536) that the form last adopted was accidental only, and that in fact
there had been an agreement of common and mutual liability between those who gave the benefit of their names to the principal debtor.
It is the opinion of this Court that there is error in the judgment rendered for the plaintiff in the Superior Court — that for this error the said judgment should be reversed — and that upon the case agreed there must be judgment for the defendant.
PER CURIAM. Judgment reversed.
Cited: Southerland v. Fremont, 107 N.C. 569; Atwater v. Farthing,118 N.C. 388.